## UNITED STATES DISTRICT COURT FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

VINCENT G. MARTIN,          : CIVIL ACTION NO. 3:CV-16-0599
                               :
           Plaintiff      : (Judge Nealon)
                               :
        v.                :
                               :
MS. TRITT, <u>et al</u>.,          :
                               :
          Defendants     :

## MEMORANDUM

## I. Background

Plaintiff, an inmate confined in the State Correctional Institution, Frackville ("SCI-Frackville"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1, complaint). He seeks compensatory and punitive damages for Defendants alleged indifference to Plaintiff's medical issues, in violation of the Eighth Amendment. Id. The named Defendants are the following employees of SCI-Frackville; Superintendent Tritt, Physician Assistant Tony Izzani, Grievance Coordinator Newberry, Correctional Health Care Administrator Stanishefski, and Chief Grievance Officer Dorina Varner.

Presently before the Court is a motion to dismiss, filed on behalf of Defendants Newberry, Stanishefski, Tritt, and Varner, and a motion to dismiss, or the alternative, for summary judgment, filed on behalf of Defendant Izzani. (Docs. 19, 22).

Despite these motions having been pending since, 2016, no brief in opposition has been filed by Plaintiff.  For the reasons that follow, Defendants' motions to dismiss will be granted as unopposed.

## II.      Motion to Dismiss

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief."  Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir.2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir.2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  Id. at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556).  "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court  "'is not bound to accept as true a legal conclusion couched as a factual allegation.'"  Id. (quoted case omitted).  Thus, "a judicial conspiracy claim must

include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal."

Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir.2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a " 'plausible claim for relief.' " Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. § 1997e apply, as do the screening provisions of 28 U.S.C. § 1915(e), given that he was granted in forma pauperis status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir.2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless sua sponte rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D.Pa. June 21, 2007), aff'd,264 FedAppx. 183 (3d Cir.2008).

III.     **Allegations in Complaint**

In February 2015, Plaintiff went to sick-call "for sores that appeared in the lower half of [his] body. (Doc. 1, complaint). He "went through the process of seeing a nurse who then referred [him] to the physicians assistant Mr. Izzani who determined that it appeared [he] had spider bites." Id.

On June 24, 2015, Plaintiff filed Grievance No. 573210, stating the following:

> I arrived to SCI-Frackville on 1/21/15 and every month I've been getting serious sores all over the bottom half of my body. I receive the same treatment every month over the course of my stay here so far. The sores get worse & multiply everytime. I get told repeatedly the sores are "Frackville Spider Bites". It's impossible to get so many sores over about a 6 month period and I now have permanent purple scars because of this problem. I can't take it anymore and it is a monthly problem, emergency medical. I've asked to be seen outside the facility so it can be determined by a real doctor what my condition is. This is affecting me severely my legs ache in pain, they are sores that keep stressing me out over what they could be. Now I am mentally exhausted. I need something done. Please I beg for your help.

(Doc. 1-3 at 8, Grievance No. 573210). On June 25, 2015, Defendant Grievance Coordinator Newberry, received Plaintiff's grievance and assigned it to be reviewed for a response. Id.

On July 14, 2015, Defendant, Correctional Health Care Administrator Stanishefski, denied Plaintiff's grievance as follows:

> A review of the grievant's medical record has been conducted and reveals the following.

1.The grievant has had 4 episodes of infected skin lesions since arrival at Frackville. The skin infections have been located in the lower half of the body.
2.The treatment is the same because it has been effective. The skin lesions are still localized eruptions.
3.The grievant does not have spider bites.
4.The grievant has been diagnosed by means of examination, response to treatment and laboratory diagnostics. The grievant has been educated on the cause and the preventative measures. SCI-Frackville's physician care for inmates is provided by a State Contract. The selected contract company only hires qualified physicians to provide care to inmates.
5.The grievant has been receiving appropriate care for the skin lesions.

The grievance is denied.

(Doc. 1-3 at 7, Initial Review Response).

On August 1, 2015, Martin filed an inmate appeal to the Facility Manager, stating the following:

I arrived to SCI-Frackville on 1/21/15 and every month I've been getting serious sores all over the bottom half of my body. I receive the same treatment every month over the course of my stay here so far. The sores get worse & multiply everytime. I get told repeatedly the sores are "Frackville Spider Bites". It's impossible to get so many sores over about a 6 month period and I now have permanent purple scars because of this problem. I can't take it anymore and it is a monthly problem, emergency medical. I've asked to be seen outside the facility so it can be determined by a real doctor what my condition is. This is affecting my severely. My legs ache in pain, they are sores that keep stressing me out over what they could be. Now I am mentally exhausted. I need something done. Please I beg for your help.

(Doc. 1-3 at 5, Inmate Appeal to Facility Manager Grievance).

On August 7, 2015, Defendant, Superintendent Tritt, upheld the initial

response with the following:

> Your grievance was thoroughly investigated by CHCA Stanishefski
> and she provided you with a detailed response. Your medical care
> is important and thus you are urged to continue working with the
> physicians as they have the medical license and can make the
> appropriate clinical decisions for your care.
> I concur with the findings of the initial response.

(Doc. 1-3 at 4, Facility Manager's Appeal Response).

On August 18, 2015, Plaintiff filed the following Inmate Appeal to Final

Review Grievance:

> I arrived to SCI-Frackville on 1/21/15 and every month I've been
> getting serious sores all over the bottom half of my body. I receive
> the same treatment every month over the course of my stay here so
> far. The sores get worse & multiply everytime. I get told
> repeatedly the sores are "Frackville Spider Bites". It's impossible
> to get so many sores over about a 6 month period and I now have
> permanent purple scars because of this problem. I can't take it
> anymore and it is a monthly problem, emergency medical. I've
> asked to be seen outside the facility so it can be determined by a
> real doctor what my condition is. This is affecting me severely my
> legs ache in pain, they are sores that keep stressing me out over
> what they could be. Now I am mentally exhausted. I need
> something done. Please I beg for your help.

(Doc. 1-3 at 6, Inmate Appeal to Final Review Grievance).

On November 18, 2015, Defendant Chief Grievance Coordinator Dorina

Varner denied Plaintiff's grievance, stating the following:

> Your concern of not being provided proper medical care for
> multiple skin infections was reviewed by the staff of the Bureau of
> Health Care Services. They reviewed the medical record and
> determined that the medical care provided was reasonable and
> appropriate. These clinical decisions are made by your attending
> practitioner. You are encouraged to participate in your treatment
> plan and to discuss your concerns or changes of condition with a
> practitioner. No evidence of neglect or deliberate indifference has
> been found. Therefore, your grievance appeal to this office is
> denied as well as your requested relief.

(Doc. 1-3 at 1, Final Appeal Decision).

On April 13, 2016, Plaintiff filed the instant action. He seeks compensatory

and punitive damages for Defendants' alleged indifference to his medical needs. (Doc.

1, complaint).

## IV. **Discussion**

### A. **Exhaustion**

The Prison Litigation Reform Act requires that inmates exhaust the

administrative remedies that are available to them prior to bringing suit in federal court.

42 U.S.C. § 1997e(a). Specifically, the PLRA provides that "[n]o action shall be

brought with respect to prison conditions under section 1979 of the Revised Statutes of

the United States (42 U.S.C. § 1983) or any other federal law, by a prisoner confined in

any jail, prison, or other correctional facility until such administrative remedies as are

available have been exhausted." Id.

The United States Supreme Court has repeatedly confirmed that "[t]here is no question that exhaustion is mandatory under the PLRA." Ross v. Blake, —— U.S. ——, 136 S.Ct. 1850, 1856, 195 L.Ed.2d 117 (2016), quoting Woodford v. Ngo, 548 U.S. 81, 85 (2006), accord Jones v. Bock, 549 U.S. 199, 211 (2007). "And that mandatory language means a court may not excuse a failure to exhaust, even to take [ ] [special] circumstances into account." Ross at 1856.

Because the PLRA is a statutory exhaustion provision, "Congress sets the rules—and courts have a role in creating exceptions only if Congress wants them to. For that reason mandatory exhaustion statutes like the PLRA establish mandatory exhaustion regimes, foreclosing judicial discretion." Id. at 1857. Accordingly, exhaustion is required regardless of the availability of the requested relief, and regardless of the nature of the underlying claim, whether it arises from excessive force, or a violation of the constitution. Id., citing, Booth v. Churner, 532 U.S. 731, 741 (2001); Porter v. Nussle, 534 U.S. 516, 520 (2002); Woodford, 548 U.S. at 91.

Additionally, exhaustion must be "proper," which "demands compliance with an agency's deadlines and other critical procedural rules." Woodford, at 90. This serves to protect "administrative agency authority" over the matter, giving an agency "an opportunity to correct its own mistakes ... before it is haled into federal court," and

"discourages 'disregard of [the agency's] procedures." <u>Id</u>. at 89, quoting <u>McCarthy v.</u>

<u>Madigan</u>, 503 U.S. 140, 145 (1992).

The Pennsylvania Department of Corrections' administrative remedies for inmate grievances are provided for in Department of Corrections Administrative Directive 804. <u>See</u> <u>www.cor.state.pa.us,</u> DOC Policies, DC-ADM 804, Inmate Grievance System Policy ("DC-ADM 804"). This policy establishes the Consolidated Inmate Grievance Review System, through which inmates can seek to resolve issues relating to their incarceration. <u>Id</u>. The first step in the inmate grievance process is initial review. <u>Id</u>. Grievances must be submitted for initial review within 15 working days after the event upon which the grievance is based. <u>Id</u>. After initial review, the inmate may appeal to the superintendent of their institution. <u>Id</u>. Upon completion of the initial review and the appeal from the initial review, an inmate may seek final review. <u>Id</u>.

Importantly, the policy specifically requires that the grievant specifically name the individuals involved in the events complained about:

12.     The text of the grievance must be legible, understandable, and presented in a courteous manner. The inmate must include a statement of facts relevant to the claim.

* * * *

b.     The inmate shall identify individuals directly involved in the event(s).

Id.

Plaintiff's own exhibits reveal that Plaintiff exhausted to final review, a grievance pertaining to the itchy bumps on his legs and body. However, at no time does Plaintiff identify any named Defendant within his grievance or subsequent appeals.

"[I]n the absence of any justifiable excuse, a Pennsylvania inmate's failure to properly identify a defendant constitute[s] a failure to properly exhaust his administrative remedies under the PLRA." Williams v. Commonwealth, 146 F. App'x 554, 557 (3d Cir. 2005). Where, as here, the provisions of a grievance process expressly require the identification of named defendants, the Court of Appeals for the Third Circuit has found procedural default in an inmate's failure to comply as instructed. See, e.g., Rosa-Diaz v. Dow, 683 Fed.Appx. 103, 105–06 (3d Cir. 2017) (inmate procedurally defaulted on claim where grievance policy required identification of defendants, and inmate failed to name particular defendant in grievance related to assault); Watts v. Herbik, 364 Fed.Appx. 723 (3d Cir. 2010) (finding that Watts' failure to mention Tretinik in his administrative grievance and did not place him on notice of alleged wrongdoing, Watts procedurally defaulted all claims against him).

In Spruill v. Gillis, 372 F.3d 218, 230 (3d Cir. 2004), our Court of Appeals held that congressional policy objectives were best served by interpreting the statutory "exhaustion requirement to include a procedural default component." The court further

ruled that procedural default under § 1997e(a) is governed by the applicable prison grievance system, provided that the "prison grievance system's procedural requirements [are] not imposed in a way that offends the Federal Constitution or the federal policy embodied in § 1997e(a)." Id. at 231, 232. As explained in Spruill, "[t]he purpose of the regulation here is to put the prison officials on notice of the persons claimed to be guilty of wrongdoing." Spruill, 372 F.3d at 234. The current version of DC-ADM 804 is even more compelling given the inclusion of the phrase "shall identify."

In this case, while Plaintiff presented and pursued a grievance which made a general complaint about medical care he received at SCI-Frackville, he failed to ever identify any individual that was directly involved with the alleged inadequate medical care he claims to have received. Martin offers no explanation as to why he did not name Defendant Izzani in his grievance. Thus, he has sustained a procedural default.

In Spruill, the Third Circuit found that a procedural default component to the exhaustion requirement served the following congressional objectives: "(1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits." 372 F.3d at 230. In Pusey v. Belanger, No. Civ. 02-351, 2004 WL 2075472 at *2-3 (D. Del. Sept. 14, 2004), the court applied Spruill to dismiss

an inmate's action for failure to timely pursue an administrative remedy over the inmate's objection that he did not believe the administrative remedy program operating in Delaware covered his grievance.  In <u>Berry v. Kerik</u>, 366 F.3d 85, 86-88 (2d Cir. 2004), the court affirmed the dismissal of an inmate's action with prejudice where the inmate had failed to offer appropriate justification for the failure to timely pursue administrative grievances.  In <u>Ross v. County of Bernalillo</u>, 365 F.3d 1181, 1186 (10th Cir. 2004), the court embraced the holding in <u>Pozo</u>, stating that "[a] prison procedure that is procedurally barred and thus is unavailable to a prisoner is not thereby considered exhausted."  These precedents support this Court's decision to grant Defendant Izzani's motion dismiss.

## B.  <u>Personal Involvement</u>

In a § 1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and that the conduct complained of deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States.  <u>Parratt v. Taylor</u>, 451 U.S. 527 (1981); <u>Kost v. Kozakiewicz</u>, 1 F.3d 176, 184 (3d Cir.1993); <u>Beattie v. Dept. of Corrections SCI–Mahanoy</u>, 2009 WL 533051, *3 (M.D.Pa.).  Further, Section 1983 is not a source of substantive rights.  Rather, it is a

means to redress violations of federal law by state actors. <u>Gonzaga Univ. v. Doe</u>, 536 U.S. 273, 284–85 (2002).

Moreover, it is well established that personal liability in a civil rights action cannot be imposed upon an official based on a theory of respondeat superior. <u>See</u>, <u>e.g.</u>, <u>Rizzo v. Goode</u>, 423 U.S. 362 (1976); <u>Hampton v. Holmesburg Prison Officials</u>, 1546 F.2d 1077, 1082 (3d Cir.1976); <u>Parratt</u>, supra. The doctrine of respondeat superior does not apply to constitutional claims. <u>See Ashcroft v. Iqbal</u>, 556 U.S. 662, (2009) ("Government officials may not be held liable for unconstitutional conduct of their subordinates under a theory of respondeat superior." ); <u>see</u> <u>also</u> <u>Evancho v. Fisher</u>, 423 F.3d 347, 353 (3d Cir.2005) (claims brought under 42 U.S.C. § 1983 cannot be premised on a theory of respondeat superior ) (citing <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988)). Rather, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events underlying a claim. <u>Iqbal</u>, 556 U.S. at 675 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As the Court stated in <u>Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1998):

> A defendant in a civil rights action must have personal involvement in the alleged wrongs.... [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity. (Citations omitted).

See also Beattie v. Dept. of Corrections SCI–Mahanoy, 2009 WL 533051, *3 ("a prerequisite for a viable civil rights claim is that a Defendant directed, or knew of and acquiesced in, the deprivation of a Plaintiff's constitutional rights."), citing Rode, supra.

Finally, a prison official's response or lack thereof to an inmate's Administrative remedies is not sufficient alone to hold the official liable in a civil rights action. Glenn v. Delbalso, 599 Fed.Appx. 457 (3d Cir. 2015)(access to prison grievance procedures is not a constitutionally-mandated right, and allegations of improprieties in the handling of grievances do not state a cognizable claim under § 1983); Mincy v. Chmielsewski, 506 Fed. App'x. 99 (3d Cir. 2013)(an officer's review of, or failure to investigate, an inmate's grievances generally does not satisfy the requisite personal involvement); Brooks v. Beard, 167 Fed. App'x. 923 (3d Cir. 2006)(holding that although the complaint alleges that Appellees responded inappropriately to Brook's later-filed grievances about his medical treatment, these allegations do not establish Appellees' involvement in the treatment itself).

It is apparent from the Plaintiff's allegations that the only roles of Defendants Newberry, Stanishefski, Tritt and Varner, were all connected to the filing of Plaintiff's grievance and subsequent appeals. However, such claims that these Defendants violated his constitutional rights regarding their handling of his grievance, fails as a matter of

law, and these Defendants are entitled to dismissal.  Thus, the motion of Defendants

Newberry, Stanishefski, Tritt and Varner to dismiss will be granted.

## V.        <u>Leave to Amend</u>

Before dismissing a complaint for failure to state a claim upon which relief

may be granted, the Court must grant the Plaintiff leave to amend his complaint unless

amendment would be inequitable or futile . <u>See</u> <u>Grayson v. Mayview State Hospital</u>, 293

F.3d 103, 114 (3rd Cir. 2002).  Based on the foregoing, we find futility in allowing

Plaintiff to file an amended complaint with respect to the allegations raised in the instant

action.

## VI.  <u>Conclusion</u>

Defendants' motions to dismiss the above captioned action for Plaintiff's

failure to exhaustion administrative remedies and failure to allege personal involvement

will be granted.   An appropriate order will follow.


Dated: October 5, 2017                         /s/ William J. Nealon
                                               **United States District Judge**

**UNITED STATES DISTRICT COURT FOR THE**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| VINCENT G. MARTIN, | : | CIVIL ACTION NO. 3:CV-16-0599 |
| | : | |
| Plaintiff | : | (Judge Nealon) |
| | : | |
| v. | : | |
| | : | |
| MS. TRITT, <u>et al</u>., | : | |
| | : | |
| Defendants | : | |

## <u>ORDER</u>

**AND NOW, THIS 5th DAY OF OCTOBER, 2017**, for the reasons set forth

in the Memorandum of this date, **IT IS HEREBY ORDERED THAT:**

1. The motion to dismiss filed on behalf of Defendants Newberry, Stanishefski, Tritt and Varner (Doc. 19) is **GRANTED**.

2. Defendant Izzani's motion to dismiss (Doc. 22), is **GRANTED**.

3. The Clerk of Court is directed to **CLOSE** this case.

4. Any appeal from this Order will be deemed frivolous, without probable cause and not taken in good faith.

/s/ William J. Nealon
**United States District Judge**